CHARLES J. SCHUCK, Judge.
On January 3, 1944, claimant together with his wife, also a claimant, and 15 year old daughter left their home in Weston, West Virginia, to drive in their automobile to Auburn, in Ritchie county, for the purpose of visiting relatives in the latter place. They drove from Weston to Linn in Gilmer county and then to what is known as Cox’s Mills from which point they turned on a secondary road in the direction of Auburn in Ritchie county. Leaving Gilmer county and about 150 feet after crossing into- said Ritchie county, claimant maintains (record p. 11) that he could feel from the action of the car that there was ice on the road which couldn’t be seen, however, it was slick and smooth and by reason of the said icy condition on the said highway claimant’s automobile began to skid and slide and some distance down the hill from where they had crossed into Ritchie county, the automobile went over an embankment causing the injures to claimants as set forth in their petition, and injuring and damaging said automobile.
*394 Claimants maintain that the state road commission was at fault in not having the highway in Ritchie county cleared of the ice and snow, which they contend had been caused by a fall of snow some days previous, followed by rain and freezing weather causing the ice on the road and making it dangerous for public travel. No defect in the road or highway in question is alleged, save, of course, the matter of the accumulation of the ice and claimants prosecute their claims solely on the ground that the state road commission and its employees were derelict in the duty they owed to the traveling public in failing to clear the road in question of the ice that had formed by reason of the weather conditions prevailing at the time. True the petition further alleges that there were no guardrails at and near the embankment where the automobile left the road, but an analysis of claimants’ petition, as well as of the testimony submitted during the hearing, plainly indicates that the absence of guardrails at the place in question had nothing to do with the happening of the accident nor did their absence in any manner seemingly aggravate the extent of the injuries to claimants or to the automobile being driven by them.
Under these conditions and circumstances, assuming that claimants sustained the injuries both to themselves and their automobile, was the state road commission liable and should an award be made under the facts and testimony adduced, to the claimants? The accumulation of the ice forming on said highway on the Ritchie county secondary route No. 7, between Auburn, Ritchie county and the Gilmer county line, took place sometime between ten o’clock on the night of January 2, 1944, and early on the morning of January 3, 1944.
At common law a state or highway commission was not accountable for injuries sustained by reason of defects in a highway; and especially so, do the authorities seem to hold, with but few exceptions, that in no instance can a state or highway commission or a department thereof be held accountable for injuries sustained by reason of an accident caused by ice or snow on any of its highways. Ordinary care is undoubtedly the limit of responsibility on the part of a state or highway commission where injuries are caused by icy conditions on the highways; and the question, therefore, presented *395 to us for our consideration and determination is whether, under all the circumstances and testimony adduced in this case, the state used ordinary care in its supervision of the highway in question and in keeping it in proper condition for public travel.
As heretofore stated there were no defects in the highway so far as the testimony shows or the petition alleges save the matter of the accumulation of ice after a freeze already referred to. The matter of guardrails is eliminated from our consideration of the merits of the claims by reason of the fact, that the undisputed testimony is that the road at the place or near where the accident happened, that is where the automobile left the road, had a berm on gach side about 7 feet in width making the road approximately 28 feet wide. With such width on which to travel and considering that it was a secondary road, of which there are about 700 miles in Ritchie county, the state cannot be expected to erect barriers or guardrails where no apparent danger exists and where the use of proper care and caution would make travel safe under ordinary conditions. To be obliged to maintain such guardrails on all roads of this character, as wide as it is and without apparent danger, would almost bankrupt the state and make it impossible to keep any of its roads, primary or otherwise, in proper, passable condition. A duty of such magnitude is not imposed on any state so far as the maintenance and upkeep of its highways are concerned.
The duty of the state road commission or its employees was undoubtedly a qualified one, under the circumstances. There was no statutory obligation on the road commission for the removal of ice and snow and only reasonable care is required to keep a road fit for travel during the winter months. This is especially true with secondary roads or those lightly traveled.
The testimony shows that the road employees, at least several of them, located in Ritchie county were engaged on this particular morning in making a survey of the primary roads, the roads over which there would be the most travel to ascertain their condition and to determine what if anything, would be necessary on the part of the road employees to make the *396 said primary roads safe for travel at the time indicated. Testimony further shows that one of the employees who was prevented from coming to work that morning by reason of the rain, shortly after hearing of the accident went to the scene and began flagging whatever traffic there might be on this hill road in order that no other accidents would occur there that morning. He had telephoned to the headquarters at Harrisville from Auburn for cinders previous to the time he had gone to the hill in question. He remained at and near the scene of the accident flagging and caring for traffic for several hours, or until the ice had disappeared, about twelve noon or one o’clock on the day of the accident.
While it is unfortunate that"* the accident occurred, yet it would appear from all of the testimony, and we so hold, that the state road commission or its employees and superintendent in charge of maintaining the roads in Ritchie county were not guilty of any negligence and that consequently the state would not be liable in damages under the claims as filed and the testimony as submitted in the hearing of the said claims. It. cannot be expected, of course, that in a county the size of Ritchie, with the many miles of primary roads and secondary roads to control'and survey, that the state could have a sufficient number of employees to go over all these roads in a few hours time after a snowfall or the accumulation of ice caused by freezing weather the night before. Weather conditions, by reason' of which the ice had been caused, were such that it had rained a day or so before January 3 and then frozen the night before, and this accident happened about ten o’clock on the morning of the third. No report had been made at the highway headquarters or to anyone else until after the happening of the accident and it could not be expected that within the few hours time, the road employees would be able to survey all of the roads in Ritchie county and have them in proper and safe condition. Again it must be stated that to do so would entail a cost so tremendous that it would be prohibitive, and the state could not afford the expense and maintenance of roads with such duties imposed. We therefore refuse awards as to each claim.